IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MARGARET BODO,**<br><br>        **Plaintiff,**<br><br>   v.<br><br>**ST. LUKE'S HOSPITAL – GRAND VIEW CAMPUS,**<br><br>        **Defendant.** | **CIVIL ACTION NO. _____**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT AND JURY DEMAND**

Plaintiff Margaret Bodo, by and through her attorneys, Bell & Bell LLP, hereby files the following Complaint and Jury Demand ("Complaint"):

**PRELIMINARY STATEMENT**

1. This is an action for an award of damages, attorneys' fees and other relief on behalf of Plaintiff Margaret Bodo ("Ms. Bodo"), a former employee of St. Luke's Hospital – Grand View Campus ("GVH" or "Defendant"), formerly known as Grand View Hospital. Despite her loyalty and consistent performance, Ms. Bodo has been harmed by Defendant's harassment and discrimination on the basis of her disability or perceived disability, by Defendant's retaliation against her for reporting a workplace injury, and Defendant's retaliation against her for requesting a reasonable accommodation, culminating in her wrongful termination on August 8, 2024.

2. This action is filed pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA"), the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. ("PHRA") and the common law of the Commonwealth of Pennsylvania.

## JURISDICTIONAL STATEMENT

3. This Court has original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States pursuant to 28 U.S.C. §§ 1331 and 1391.

4. The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. § 1343(4), which grants the District Court original jurisdiction in any civil action authorized by law to be commenced by any person to recover damages to secure equitable or other relief under any act of Congress providing for the protection of civil rights.

5. This Court has supplemental jurisdiction over any Pennsylvania state law claims pursuant to 28 U.S.C. § 1367.

6. All conditions precedent to the institution of this suit have been fulfilled. On January 29, 2025, Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dual-filed as a Complaint with the Pennsylvania Human Relations Commission ("PHRC"). On July 18, 2025, the EEOC issued a Notice of Right to Sue to Plaintiff. This action has been filed within ninety (90) days of Plaintiff's receipt of said Notice. On September 15, 2025, the PHRC closed Plaintiff's dual-filed Complaint and provided Plaintiff with a Notice of Rights. This action has been filed within two years of the PHRC's closure of the dual-filed Complaint.

## VENUE

7. This action properly lies in the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1391(b).

8. This action properly lies in the Eastern District of Pennsylvania because the claims and significant activities associated with those claims arose in this judicial district, and Plaintiff was employed by Defendant in this judicial district.

**PARTIES**

9. Plaintiff Margaret Bodo is an adult female citizen and resident of Warrington, Pennsylvania and the United States of America.

10. Ms. Bodo is a qualified individual with a disability within the meaning of the ADA.

11. Ms. Bodo has had her disability for a period far in excess of six months.

12. Ms. Bodo's disability affects a major bodily function and substantially limits one or more major life activities.

13. Defendant St. Luke's Hospital – Grand View Campus is a community health system serving Bucks and Montgomery Counties within Pennsylvania with its main campus located at 700 Lawn Avenue, Sellersville, Pennsylvania 18960, where Plaintiff was employed.

14. Ms. Bodo was employed by Grand View Hospital, which was part of Grand View Health.  The companies merged in 2025 and Grand View Hospital is now known as St. Luke's Hospital – Grand View Campus.

15. At all relevant times, Defendant is and has been an employer employing more than fifty (50) employees.

16. Defendant GVH does significant business within the Commonwealth of Pennsylvania.

17. At all relevant times, employees of GVH acted as agents and servants for GVH.

18. At all relevant times, employees of GVH were acting within the scope of their authority and in the course of employment under the direct control of GVH.

19. At all times material hereto, GVH acted by and through its authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with GVH and in furtherance of GVH's business.

20. At all times relevant hereto, Defendant is and has been an "employer" and/or "person" within the meaning of the laws at issue in this matter, and is accordingly subject to the provisions of said laws.

21. At all relevant times hereto, Plaintiff Margaret Bodo was an "employee" within the meaning of the laws at issue in this matter, and is accordingly entitled to the protections of said laws.

22. This Honorable Court has jurisdiction over Defendant.

## FACTS

23. Beginning in or about September 2020, Ms. Bodo began her employment with Grand View Hospital as the Director of Imaging.

24. Throughout her employment with GVH, Ms. Bodo was a dedicated and successful employee of GVH who performed her duties in an excellent and hardworking manner.

25. Despite her loyalty and consistent performance, Ms. Bodo was discriminated against and harassed on the basis of her disability and/or perceived disabilities, was retaliated against for reporting a workplace injury, and was retaliated against for seeking accommodation of her disability, culminating in her wrongful termination on August 8, 2024.

26. During her employment, Ms. Bodo was subjected to discrimination and harassment after she suffered from an accident that resulted in a severe injury and disability.

27. Specifically, on or about February 2, 2024, Ms. Bodo was transported to a hospital via an ambulance after she experienced a major accident that led to a compression fracture of her T12 vertebra.

28. Ms. Bodo was hospitalized for several days and was eventually discharged on February 6, 2024.

29. Ms. Bodo was instructed to rest from work for approximately six weeks.

30. Ms. Bodo was out of work as an accommodation of her disability.

31. Ultimately, Ms. Bodo returned to work on March 4, 2024, which was earlier than originally anticipated.

32. Immediately upon her return to work, Ms. Bodo was subjected to discrimination and harassment on the basis of her disability.

33. Specifically, Ms. Bodo was subjected to increased scrutiny and was constantly chastised and counseled for, as well as instructed to rectify, alleged "incidents" in which Ms. Bodo was not involved and/or was not the responsible party.

34. By way of example, on April 23, 2024, Ms. Bodo's supervisor – Jacqueline Howenstein, Associate Vice President of Operations – handed Ms. Bodo a document indicating that Ms. Bodo was to create a Radiology Process Improvement Plan on the grounds that staff had patients in the hallway waiting to be escorted back upstairs to their rooms by the transportation staff.

35. This alleged issue appears to have just been a means by which to chide Ms. Bodo and was not in fact a legitimate concern to be addressed, as the document did not contain a date on which it was to be returned to Ms. Howenstein, and there were no follow up meetings or conversations regarding this alleged issue.

36. Nonetheless, Ms. Bodo took the issue seriously and sent an email to her department reminding staff that patients were not to be left unattended in the hallways.

37. By way of another example, on or about April 27, 2024, an incident occurred in which the on-call physician, Dr. Penn Tong approved his wife, Dr. Marla Perez, an Interventional Radiologist who had not yet finished her fellowship, to assist in performing a PICC placement on a patient.

38. Ms. Bodo was not informed of this decision by Dr. Tong, as no staff ever contacted her to alert her to the situation.

39. Ms. Bodo only learned about this incident after she overheard staff speaking about it on or about May 2, 2024.

40. Upon being briefed on the situation, Ms. Bodo immediately expressed that Dr. Perez was not credentialed to perform any studies at GVH and thus should not have been permitted to assist in the PICC procedure.

41. Notwithstanding the fact that Ms. Bodo had not been made aware of the incident until after the fact, and that she had immediately expressed her disapproval after learning about what had occurred, on or about May 8, 2024, Ms. Bodo was sent home indefinitely pending an investigation into the incident.

42. Upon being questioned that day by Ms. Howenstein and Jillian Laudenslager, Chief Nursing Officer, regarding the incident, Ms. Bodo explained how she had come to learn about the incident.

43. Despite her lack of involvement in the incident and that Ms. Bodo had no knowledge of it until after it had already occurred, Ms. Bodo was thereafter informed that she was being issued a Final Written Warning for failing to report the incident and for poor leadership.

44. Notably, individuals who were aware of the incident at the time that it occurred did not receive similar discipline.

45. On or about Wednesday, June 5, 2024, while working at Grand View, the chair that Ms. Bodo was sitting on broke in half, causing Ms. Bodo to fall backwards and land on her back.

46. This workplace accident reinjured Ms. Bodo's back and re-aggravated her disability. Ms. Bodo screamed in pain as she fell and was lying on the floor.

47. When the administrative assistant, Sharon Wampole, came rushing in, Ms. Bodo requested that she contact Ms. Howenstein.

48. Ms. Howenstein walked Ms. Bodo to the Emergency Room for assessment and care.

49. At this time, Ms. Howenstein inappropriately and insensitively commented to Ms. Bodo, "Margie, if you wanted a new chair, all you had to do was ask."

50. Ms. Bodo was then sent home to rest for the remainder of the day and did not return to work until Monday, June 10, 2024.

51. After reporting this incident, Ms. Bodo was retaliated against for seeking accommodations and reporting her workplace injury, and she continued to be given inappropriate discipline for incidents in which she was not involved and/or was not the responsible party.

52. By way of example, Ms. Bodo was disciplined after an issue arose on Wednesday, July 3, 2024 regarding the on-call schedule.

53. The Emergency Room attempted to contact the Ultrasound Technician on call, Diane Gurvich, per the schedule made by Ultrasound Supervisor Rushil Amin.

54. Ms. Bodo spoke with the nursing supervisor on call about who was on call for Vascular, and learned that Debbie Bittner was on call.

55. Because Ms. Bittner was not dual certified, she could not perform the ultrasound studies.

56. Ms. Bodo stated that she would follow up with the sonographer, as the Ultrasound Supervisor was out of the country at the time.

57. Ms. Bodo tried contacting other sonographers, but no one answered their phones.

58. Ms. Bodo also followed up with Ms. Gurvich, who stated that she had previously informed Mr. Amin that she would not be available for call on July 3, 2024 but had been scheduled anyway.

59. Ms. Bodo asked Mr. Amin about the scheduling issue, and he acknowledged that he had received the information from Ms. Gurvich and had inadvertently forgotten to make the change on the call schedule.

60. Ms. Bodo shared this information with Ms. Howenstein and apologized for the situation even though she had not been at fault for this situation and had taken all possible steps to address and resolve the issue.

61. Ms. Bodo was nonetheless placed on yet another Radiology Process Improvement Plan because the ultrasound call schedule had been incorrect and had caused patients to be transferred out.

62. Ms. Bodo accordingly drafted a plan, directing that she or another individual would contact the on-call technician daily to confirm their availability and ability to take a call.

63. Ms. Bodo received no response to her plan, and despite her best efforts to rectify the issue and her lack of involvement in the situation, she was informed by Ms. Howenstein that

the ultrasound schedule was Ms. Bodo's fault, that she could not be trusted, and that it "did not look good" for her.

64. Ms. Howenstein placed on the blame on Ms. Bodo despite the fact that supervisors, not Ms. Bodo, are responsible for their staff assignments.

65. In the month preceding her separation, it became clear that Ms. Bodo was being targeted for termination.

66. On July 5, 2024, Ms. Bodo contacted Bethany Heintz, RN, copying Ms. Howenstein, regarding crash carts in radiology not being checked on during the holiday.

67. She did not receive a response.

68. Subsequently, Ms. Bodo was blamed for an incident that had occurred while she was out of work.

69. Specifically, on July 25, 2024 (while Ms. Bodo was on vacation, from July 19 through July 28), an IR Lead Technician – without competency to do so – performed a tube insertion/change without a physician present.

70. The nursing staff reported this issue to Ms. Howenstein.

71. In turn, Ms. Howenstein discussed the issue with Lynn Snyder.

72. At a meeting on July 29, 2024, Ms. Bodo was shocked to learn that she was being blamed for the incident, despite the fact that she had been away on vacation when the incident occurred.

73. Ms. Bodo was also questioned as to why she did not reach out to Ms. Howenstein regarding the incident.

74. Ms. Bodo responded that Ms. Howenstein had been in direct contact and communication with Ms. Snyder regarding the issue and that she believed Ms. Howenstein would have reached out to her directly if she wanted to involve her.

75. Ms. Howenstein then claimed that Ms. Bodo should have been the one to reach out.

76. Prior to the end of the meeting, Ms. Bodo was compelled to note that she had never stated anything falsely to anyone and was sorry that Ms. Howenstein felt that she could not trust her.

77. Prior to Ms. Bodo leaving the meeting to return to her duties, Ms. Howenstein warned Ms. Bodo again that it "did not look good" for her.

78. On August 2, 2024, Ms. Bodo was scheduled for a meeting on August 8, 2024. The participants at the meeting were Ms. Bodo; Ms. Howenstein; and Lauren Murray of Human Resources.

79. When Ms. Bodo attended the meeting on August 8, 2024, she was provided with a separation agreement and terminated.

80. Given her treatment throughout her employment with Defendant, Ms. Bodo maintains that she was subjected to discrimination and harassment on the basis of her disability and/or perceived disability, was retaliated against for reporting a workplace injury, was retaliated against for requesting a reasonable accommodation of her disability and was terminated as a result of discrimination and retaliation in violation of the ADA, PHRA and Pennsylvania common law.

81. Ms. Bodo has suffered mental anguish and severe emotional distress as a direct and proximate result of the actions and inactions of Defendant.

82. Defendant and its agents acted with knowledge of, or in reckless disregard of the probability that their actions and inactions would cause Ms. Bodo to suffer emotional distress.

83. Defendant and its agents acted with the intent of causing or with reckless disregard for the probability that their actions would cause Ms. Bodo severe emotional distress.

84. Ms. Bodo has suffered financial losses, which include, among other things, lost wages, medical expenses, and an obligation for attorneys' fees and costs of bringing suit, as a direct and proximate result of the actions and inactions of Defendant.

85. Defendant willfully violated the ADA, as Defendant knew that its actions violated the statutes and/or acted with reckless disregard as to whether its actions violated the ADA.

86. As a result of the Defendant's conduct described herein, Ms. Bodo has incurred a significant obligation for attorneys' fees and costs of bringing this action.

## COUNT I
### The Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA")

87. Plaintiff Margaret Bodo repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

88. Based on the foregoing, Defendant GVH has engaged in unlawful employment practices in violation of the Americans with Disabilities Act.

89. In discriminating against and harassing Ms. Bodo on the basis of her disability, and/or because Defendant regarded Ms. Bodo as disabled, and in retaliating against Ms. Bodo, Defendant violated the ADA.

90. Said violations were intentional and willful.

91. Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights.

92. Said violations warrant the imposition of punitive damages.

93. As the direct and proximate result of Defendant's violation of the Americans with Disabilities Act, Plaintiff Margaret Bodo has sustained loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon, and has incurred attorneys' fees and costs.

94. Plaintiff is suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendant's actions unless and until this Court grants the relief requested herein.

## COUNT III
**Pennsylvania Human Relations Act, 43 P.S. § 951, et seq.**

95. Plaintiff Margaret Bodo repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

96. Based on the foregoing, Defendant engaged in unlawful employment practices in violation of the Pennsylvania Human Relations Act.

97. In discriminating against and harassing Ms. Bodo on the basis of her disability, and/or because Defendant regarded Ms. Bodo as disabled, and in retaliating against Ms. Bodo, Defendant violated the PHRA.

98. As the direct and proximate result of Defendant's violations of the Pennsylvania Human Relations Act, Plaintiff has sustained loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon, and has incurred attorneys' fees and costs.

99. Plaintiff is suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendant's actions unless and until this Court grants the relief requested herein.

## COUNT III
**Wrongful Termination**

100. Plaintiff Margaret Bodo repeats and incorporates by reference the allegations of all previous paragraphs as if fully set forth at length herein.

101. As set forth herein, Margaret Bodo reported a workplace injury to Defendant that was or should have been treated as a workplace injury covered by the Pennsylvania Workers' Compensation Law.

102. Defendant terminated Ms. Bodo in retaliation for her report of a workplace injury in violation of Pennsylvania public policy.

103. The above-described conduct of Defendant, in terminating Ms. Bodo in retaliation for her report of a workplace injury, represents wrongful termination pursuant to the common law of the Commonwealth of Pennsylvania.

104. As the direct and proximate result of Defendant's wrongful termination of Ms. Bodo, Plaintiff has sustained a loss of earnings, severe emotional and psychological distress, loss of self-esteem, damage to her professional reputation and career, loss of future earning power, as well as back pay, front pay, and interest due thereon, and has incurred attorneys' fees and costs.

105. Plaintiff is suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendant's actions unless and until this Court grants the relief requested herein.

## PRAYER FOR RELIEF

106. Plaintiff Margaret Bodo repeats and incorporates by reference the allegations of all previous paragraphs as if fully set forth at length herein.

**WHEREFORE**, Plaintiff Margaret Bodo respectfully requests that this Court enter judgment in her favor and against Defendant GVH and Order:

a. Appropriate equitable relief including reinstatement or front pay;

b. Defendant to compensate Plaintiff with a rate of pay and other benefits and emoluments of employment to which she would have been entitled had she not been subjected to unlawful discrimination, harassment and retaliation;

c. Defendant to compensate Plaintiff with the wages and other benefits and emoluments of employment lost because of its unlawful conduct;

d. Defendant to pay Plaintiff punitive damages;

e. Defendant to pay Plaintiff compensatory damages for future pecuniary losses, pain and suffering, inconvenience, mental anguish, loss of employment and other nonpecuniary losses as allowable;

f. Defendant to pay Plaintiff's costs of bringing this action and her attorneys' fees;

g. Plaintiff be granted any and all other remedies available pursuant to the ADA, the PHRA and Pennsylvania common law; and

h. Such other and further relief as is deemed just and proper.

## JURY DEMAND

Plaintiff Margaret Bodo hereby demands trial by jury as to all issues so triable.

By: */s/ Christopher A. Macey, Jr.*
Christopher A. Macey, Jr., Esquire
Bell & Bell LLP
1617 John F. Kennedy Boulevard
Suite 1254
Philadelphia, PA 19103
(215) 569-2500

*Attorneys for Plaintiff Margaret Bodo*

Dated: October 14, 2025